No. 17-7306

IN THE

# United States Court of Appeals for the Fourth Circuit

UNITED STATES OF AMERICA,
Appellee,

v.

BLAKE CHARBONEAU,
Appellant.

_____

On Appeal from the United States District Court
for the Eastern District of North Carolina (Dever, C.J.)
_____

**REPLY BRIEF FOR APPELLANT**
_____

LOUIS C. ALLEN
ACTING FEDERAL PUBLIC DEFENDER
EASTERN DISTRICT OF NORTH CAROLINA

JACLYN L. DILAURO
ASSISTANT FEDERAL PUBLIC DEFENDER
EASTERN DISTRICT OF NORTH CAROLINA
150 Fayetteville Street, Suite 450
Raleigh, NC 27601
(919) 856-4236

March 28, 2018                                         *Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENT .........................................1

ARGUMENT .............................................................................................................2

I. THE DISTRICT COURT ERRED IN CONCLUDING THAT MR. CHARBONEAU SUFFERS FROM A "SERIOUS MENTAL ILLNESS, ABNORMALITY, OR DISORDER" FOR PURPOSES OF THE ADAM WALSH ACT
    A. Crediting Dr. Zinik's Diagnosis Of A Personality Disorder Went Against The Clear Weight Of The Evidence—And The Opinions Of Three Other Experts
    B. In The Absence Of Any Paraphilic Disorder Diagnosis, The District Court Erred In Concluding Mr. Charboneau Suffers From A Serious Mental Illness For Purposes Of The Adam Walsh Act
    C. The District Court Erred In Concluding That The Government Proved, By Clear And Convincing Evidence, That There Is A Causal Link Between Alcohol Use Disorder And/Or Dr. Zinik's Other Diagnoses And Serious Difficulty Refraining In Mr. Charboneau's Case

II. THE DISTRICT COURT ERRED IN CONCLUDING THAT MR. CHARBONEAU WILL HAVE SERIOUS DIFFICULTY REFRAINING FROM SEXUALLY VIOLENT CONDUCT OR CHILD MOLESTATION IF RELEASED

CONCLUSION .................................................................................................14

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

### CASES

*Kansas v. Crane*,
 534 U.S. 407 (2002) ..................................................................................9

*Kansas v. Hendricks*,
 521 U.S. 346 (1997) ..................................................................................9

*Taylor v. Maddox*,
 366 F.3d 992 (9th Cir. 2004) ....................................................................3

*United States v. Antone*,
 742 F.3d 151 (4th Cir. 2014) ...........................................................1, 10, 11, 12

*United States v. Begay*,
 880 F. Supp. 2d 707 (E.D.N.C. 2012) ...................................................6, 7

*United States v. Caporale*,
 701 F.3d 128 (4th Cir. 2012) ..........................................................1, 4, 5, 6, 8

*United States v. Gloshay*,
 No. 5:08-HC-2051-BR, DE 91 (E.D.N.C. June 4, 2012) .......................8

*United States v. Julius*,
 No. 5:08-HC-2076-H, DE 59 (E.D.N.C. March 18, 2013) ............1, 2, 7

*United States v. Sneezer*,
 No. 5:08-HC-2107-H, DE 65 (E.D.N.C. Nov. 30, 2012) ....................2, 7

*United States v. Wooden*,
 693 F.3d 440 (4th Cir. 2012) ...........................................................1, 3, 4

### STATUTE

18 U.S.C. § 4247(a)(6) ...............................................................................5, 8

### OTHER SOURCE

American Psychiatric Association, Diagnostic and Statistical Manual of Mental
 Disorders (5th ed. 2013) ..........................................................................6

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Government, in its fifty-four page brief, says nothing about the fact that in the twelve years since the Adam Walsh Act became law, this Court has never affirmed a civil-commitment judgment in the absence of a paraphilic disorder diagnosis. It asks that this case be the first.

This is no place to start. Mr. Charboneau has not had a new sex offense or a drop of alcohol in the past *fifteen* years. He has had excellent institutional conduct in that time, voluntarily joined the Commitment and Treatment Program more than two years ago (before he was civilly committed), and attends Alcoholics Anonymous weekly.

Nonetheless, the Government asks this Court to uphold the District Court's civil-commitment judgment, affirming a decision based either on a diagnosis ruled out by three experts and accepted by only one, in contravention of *United States v. Wooden*, 693 F.3d 440 (4th Cir. 2012), or a consensus diagnosis of alcohol use disorder, which does not contain the requisite "sexual fixation" required by this Court in *United States v. Caporale*, 701 F.3d 128 (4th Cir. 2012) and by the Adam Walsh Act itself. Neither is consistent with this Court's precedents.

And even if either diagnosis could provide the necessary "serious mental illness," the Government cannot meaningfully distinguish this case from *United States v. Antone*, 742 F.3d 151 (4th Cir. 2014), *United States v. Julius*, No. 5:08-

1

HC-2076-H, DE 59 (E.D.N.C. March 18, 2013), or *United States v. Sneezer*, No. 5:08-HC-2107-H, DE 65 (E.D.N.C. Nov. 30, 2012), in which all respondents were released because they would not have serious difficulty refraining from sexually violent conduct or child molestation if released. As to the latter two, it does not even try.

Mr. Charboneau is not the person for whom civil commitment under the Adam Walsh Act is designed. He suffers no sexual fixation and he has demonstrated over the last fifteen years that he can exercise volitional control over both his drinking and his sexual offending. This Court should reverse.

## ARGUMENT

**I.   THE DISTRICT COURT ERRED IN CONCLUDING THAT MR. CHARBONEAU SUFFERS FROM A "SERIOUS MENTAL ILLNESS, ABNORMALITY, OR DISORDER" FOR PURPOSES OF THE ADAM WALSH ACT**

**A. Crediting Dr. Zinik's Diagnosis Of A Personality Disorder Went Against The Clear Weight Of The Evidence—And The Opinions Of Three Other Experts**

The Government argues that the District Court did not err in crediting Dr. Zinik's diagnosis of a personality disorder, claiming that it "explained in a methodical and detailed fashion the essential features of the other personality disorders and how Dr. Zinik's analysis was persuasive in that area." Gov. Br. 45 (citing JA293-JA295). It is true that four-and-a-half transcript pages of the District

2

Court's oral decision describe personality disorders and Dr. Zinik's diagnosis. JA293-JA297.  But the length of that discussion is not indicative of its depth.

The District Court noted that Dr. Ross and Dr. Plaud ruled out the diagnosis, JA295, but it failed to note that Dr. North did, too, JA80.[1]  And the court offered precious little to explain *why* it found Dr. Zinik's lone opinion more persuasive than the opinions of three other experts, all of whom disagreed with him.  It was bound to do so: A district court must " 'explain[] and reconcile[e] seemingly inconsistent parts of the record' " to " 'lay[] bare the judicial thinking process' " and " 'enabl[e] a reviewing court to judge the rationality of the fact-finder's reasoning.' "  *Wooden*, 693 F.3d at 454 (quoting *Taylor v. Maddox*, 366 F.3d 992, 1007-1008 (9th Cir. 2004)).  In support of Dr. Zinik's opinion on Mr. Charboneau's *present* mental state, the court offered only that another doctor, *thirty-six years ago*, diagnosed Mr. Charboneau with schizoid personality disorder. JA295.

The Government also claims that Dr. Zinik's opinion is not "internally inconsistent" or otherwise "deficient" or "problematic."  Gov. Br. 45.  But even the District Court had to recognize at least the appearance of inconsistency.  Dr. Zinik

---

[1] The Government makes much of a screening questionnaire administered by Dr. Plaud that showed "some evidence for schizoid and histrionic personality disorders."  Gov. Br. 45 (citing JA384).  But as the District Court correctly noted, Dr. Plaud's comprehensive review of Mr. Charboneau caused him to "rule[] out the diagnosis."  JA295.

3

described Mr. Charboneau as "having little, if any, interest in sexual experience with others" which Dr. Zinik found to be characteristic of schizoid personality disorder. JA296. Acknowledging that this "might suggest that Charboneau would refrain from sexually violent conduct and lower his risk to commit sexual crimes," the District Court nonetheless accepted Dr. Zinik's say-so that "quite the opposite was true in this unique case." *Id.* It did so without explaining why that lone, seemingly contradictory opinion should be credited over three others.

Because the District Court failed to "properly tak[e] into account substantial evidence to the contrary" and because its factual finding that Mr. Charboneau suffers from a personality disorder is against the clear weight of the evidence considered as a whole, reversal is warranted. *Wooden*, 693 F.3d at 462.

### B. In The Absence Of Any Paraphilic Disorder Diagnosis, The District Court Erred In Concluding Mr. Charboneau Suffers From A Serious Mental Illness For Purposes Of The Adam Walsh Act

The Government asserts in its brief that nothing in the definition of "sexually dangerous to others" in § 4247(a)(6) limits the District Court to "paraphilic disorders listed in the DSM-5." Gov. Br. 46 (citing *Caporale*, 701 F.3d at 136).[2] That statement is partially irrelevant and partially wrong. *First*, Mr. Charboneau does not argue that a mental illness must be listed in the DSM-V to

---

[2] "DSM" is shorthand for the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders. The fifth, most recent, edition, published in 2013, is known as the DSM-V.

4

qualify under the Act. Alcohol use disorder and Dr. Zinik's diagnosed disorders are all listed in the DSM-V; no one disputes that. *Second*, the question presented in this case is whether a non-paraphilic disorder can ever be the kind of "serious mental illness, abnormality, or disorder *as a result of which* [a person] would have serious difficulty in refraining from sexually violent conduct or child molestation if released." 18 U.S.C. § 4247(a)(6) (emphasis added). And as to that question, the statute speaks clearly: A mental disorder that does not directly cause serious difficulty refraining from sexually violent conduct or child molestation does not qualify. And that causal nexus necessarily requires that a qualifying disorder must be a paraphilic disorder.

The very case on which the Government relies heavily, *Caporale*, explains precisely why that is true. In that case, this Court held that hebephilia, a paraphilic disorder, was not categorically excluded from being a "serious mental illness, abnormality, or disorder" under the statute simply because it was not listed in the DSM. *Caporale*, 701 F.3d at 136. The Court explained that any "sexual fixation" that "substantially impair[s] and disrupt[s] [a person's] life" may qualify as a "serious mental illness" for purposes of the Adam Walsh Act, whether or not that "sexual fixation" is named in the DSM. *Id.* at 137.

But neither a personality disorder nor alcohol use disorder is a "sexual fixation" of any kind. They do not generally include a component of sexual

5

fixation. *See* Gov. Br. 20 n.2 (quoting DSM-V criteria for alcohol use disorder); Gov. Br. 25 n.7 (quoting DSM-V criteria for schizotypal personality disorder); *see also United States v. Begay*, 880 F. Supp. 2d 707, 712 (E.D.N.C. 2012) (noting testimony of Drs. North and Plaud that "the correlation between substance abuse and sex offense recidivism is virtually non-existent").

Nor do they include a component of sexual fixation in Mr. Charboneau's case; the District Court acknowledged that Mr. Charboneau does not suffer from continued deviant thoughts. JA303. And the fact that no testifying expert diagnosed Mr. Charboneau with a paraphilic disorder speaks volumes: After all, paraphilic disorders (whether listed in the DSM or not) all involve an "intense and persistent sexual interest other than sexual interest in genital stimulation or preparatory fondling with phenotypically normal, physically mature, consenting human partners" that "is currently causing distress or impairment to the individual" or "has entailed personal harm, or risk of harm, to others." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) at 685.

*Caporale* instructs that courts must conduct a statutory analysis of § 4247(a)(6) and must not give blind deference or "talismanic significance" to inclusion in the DSM or other "clinical norms." *Caporale*, 701 F.3d at 136. Applying that analytical model here, the statutory requirement that a qualifying

6

disorder must itself cause serious difficulty refraining from "sexually violent conduct or child molestation" means that a qualifying disorder must incorporate a "sexual fixation." Because neither alcohol use disorder nor schizotypal personality disorder incorporates such a sexual fixation, neither qualifies as a serious mental illness under the Act, irrespective of their inclusion in the DSM.[3]

A district court case confirms this understanding. In *Begay*, all three experts opined that alcohol and cannabis dependence are not "serious mental disorders" under the Act. 880 F. Supp. 2d at 711. The court there explained that "the goal of § 4248 is to isolate *sexually* dangerous offenders" and that, in the absence of a paraphilic disorder, counting alcohol and cannabis dependence as serious mental disorders "may well test the limits of what Congress contemplated when requiring that a § 4248 respondent suffer from a *serious* mental disorder." *Id.* at 711 n.3.[4]

---

[3] The Government notes that "Dr. Plaud testified that under different circumstances alcohol use disorder, by itself, could qualify as a serious mental illness, abnormality, or disorder." Gov. Br. 49 n.11 (citing JA224-225). But, as the Government is quick to point out in other contexts, and as this Court confirmed in *Caporale*, the inquiry is a legal one, not a medical one. No psychologist's personal opinion with respect to the legal question is entitled to deference by this Court.

[4] In *United States v. Sneezer* and *United States v. Julius*, the district court recognized that it was, in 2012 and 2013, "unclear" whether substance dependence or antisocial personality disorder, alone or in combination, could ever constitute a serious mental disorder under the Act. The court did not reach the question in either case, in light of its conclusion that Sneezer and Julius would not have serious difficulty refraining from sexually violent conduct or child molestation if released. *Sneezer*, No. 5:08-HC-2107-H, DE 65 at 9; *Julius*, No. 5:08-HC-2076-H, DE 59 at 11.

7

Although the Government is correct that this decision predates *Caporale*, that fact is immaterial where the decisions are not at all in conflict with one another.

The Government cites to *United States v. Gloshay*, in which the district court concluded that "although alcohol dependence may not be considered serious in every case," it was "sufficiently severe" in Mr. Gloshay's case to satisfy the statutory requirements. No. 5:08-HC-2051-BR, DE 91 at 9 (E.D.N.C. June 4, 2012). But that case was decided prior to and without the benefit of *Caporale*'s guidance that a "serious mental illness" for purposes of the Adam Walsh Act must be a "sexual fixation" that "substantially impair[s] and disrupt[s] [a person's] life." *Caporale*, 701 F.3d at 137. And because it *is* inconsistent with *Caporale*'s mandate that only "sexual fixations" qualify as serious mental illnesses, it is *Gloshay*, rather that *Begay*, that this Court should disregard.

Contrary to the Government's suggestion, the Adam Walsh Act does not authorize civil commitment of all those whose alcohol or substance dependence, or even personality disorder, affected their "ability to function normally in society" or "significantly affected [their] interpersonal relationships, mental health, and societal separations." Gov. Br. 48. The statute is concerned only with those whose serious mental illness—sexual fixation—causes them to have serious difficulty refraining from sexually violent conduct or child molestation if released. 18 U.S.C. § 4247(a)(6).

8

As the Supreme Court has explained, there is "constitutional importance [to] distinguishing a dangerous sexual offender subject to civil commitment 'from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings." *Kansas v. Crane*, 534 U.S. 407, 412 (2002) (quoting *Kansas v. Hendricks*, 521 U.S. 346, 360 (1997)). The Adam Walsh Act does not authorize preemptive civil commitment of alcoholics, drug addicts, or those afflicted with generalized personality disorders. Their fates lie squarely within the ambit of the criminal process.

### C. The District Court Erred In Concluding That The Government Proved, By Clear And Convincing Evidence, That There Is A Causal Link Between Alcohol Use Disorder And/Or Dr. Zinik's Other Diagnoses And Serious Difficulty Refraining In Mr. Charboneau's Case

The Government asserts that the "entire premise" of Mr. Charboneau's argument that the District Court erred in finding a causal link between substance abuse disorders and/or a personality disorder and serious difficulty refraining is that the District Court "should have credited Dr. Plaud's testimony over that of Dr. Zinik." Gov. Br. 50. It claims that Mr. Charboneau "can point to no substantial evidence at trial that the district court failed to consider or error in Dr. Zinik's report relied upon by the district court." *Id.*

But Mr. Charboneau spelled out in his opening brief precisely what the District Court failed to consider as well as the error in Dr. Zinik's logic: Neither

9

the District Court nor the Government ever addresses the numerous breakdowns in Dr. Zinik's asserted causal chain. Dr. Zinik's analysis cannot explain those instances in which Mr. Charboneau used alcohol but committed no offenses or those instances in in which Mr. Charboneau used alcohol but committed non-sexual offenses. Opening Br. 38-39. And although the District Court acknowledged Dr. Plaud's disagreement with Dr. Zinik's analysis, it never "adequately considered [the] impact" of that testimony, as it was bound to do under *Antone*. *See* 742 F.3d at 169.

## II. THE DISTRICT COURT ERRED IN CONCLUDING THAT MR. CHARBONEAU WILL HAVE SERIOUS DIFFICULTY REFRAINING FROM SEXUALLY VIOLENT CONDUCT OR CHILD MOLESTATION IF RELEASED

The Government claims that the District Court took into consideration the entire record in Mr. Charboneau's case and considered and accounted for why his positive incarceration conduct is overcome by other factors. Gov. Br. 52 (citing JA301). But it did not. Although the District Court acknowledged *Antone*, the only distinction it offered was one without a difference, noting that Mr. Charboneau "is in BOP custody on a supervised release violation for which he violated his term of supervised release while in sex offender treatment." JA301. That is true, but it does nothing to compare and contrast Mr. Charboneau's excellent institutional conduct with Antone's because it speaks only to Mr. Charboneau's last sex offense, now fifteen years ago.

10

If the District Court had compared Mr. Charboneau with Antone during their most recent periods of incarceration, it would have seen precisely why the result in *Antone* is extremely powerful, published authority from this Court that Mr. Charboneau should have been released. After all, both men had severe alcohol use disorder prior to their incarceration but nonetheless refrained from using drugs or alcohol during more than a decade of incarceration (fourteen years in Antone's case, thirteen years in Mr. Charboneau's case as of the date of the civil-commitment hearing). 742 F.3d at 156; JA184; JA302. Both men attended Alcoholics Anonymous. 742 F.3d at 156; JA302. Both men were employed as orderlies in the Bureau of Prisons. 742 F.3d at 156-157; JA48. Both men abstained from sexual misconduct during their "extended incarceration." 741 F.3d at 157; JA195.

And, in one critical respect, Mr. Charboneau's institutional conduct has been even better than Antone's. Mr. Charboneau voluntarily enrolled himself in the Commitment and Treatment Program in February 2016; Antone never did. 741 F.3d at 157; JA42-JA43.

The whole point of *Antone* is that the district court in that case gave "inadequate consideration [to] Antone's behavior in the past fourteen years or so" and thus the Government had failed to muster "sufficient evidence of an ongoing volitional impairment." 741 F.3d at 168. So it is not an answer for the District

11

Court, or the Government, to say that the distinguishing factor for Mr. Charboneau is related to details surrounding fifteen-year-old offense conduct. That misses the lesson of *Antone* by a wide margin.

Nor is it enough to point to Mr. Charboneau's "admission" in December 2016 that he is sexually dangerous, given the District Court's failure to put this statement in the context of Mr. Charboneau taking responsibility for his past offending and committing to a lifetime of ongoing treatment and therapy, an admission that was thought to be "a necessary step in his path toward recovery" in *Antone*. *See* 742 F.3d at 166 n.10. What is more, Mr. Charboneau's communicative and cognitive disorders make his statements particularly difficult to parse. *See* Opening Br. 42 (citing all testifying experts' opinions regarding Mr. Charboneau's expressive language problems). Finally, Mr. Charboneau's lack of legal or psychological expertise make his opinion on the ultimate legal issue in this case irrelevant or, at the very least, of very little value.

The Government offers no response to Mr. Charboneau's argument that his case is similar to the *Julius* and *Sneezer* cases. For the reasons in Mr. Charboneau's opening brief (at 45-48), these cases also provide persuasive data points suggesting that Mr. Charboneau should have been released.

Neither does the Government offer a meaningful response to Mr. Charboneau's argument that the District Court failed adequately to credit the

12

protective factors of Mr. Charboneau's advancing age and remaining two-year term of supervised release, relying on the District Court's catchall statement that it "had considered all admissible evidence." Gov. Br. 53 (citing JA246). As noted above (at 3), that is not enough.

Finally, the Government's suggestion (at 53) that this case is more analogous to *Caporale* than to *Antone* is curious. It makes this point in its discussion of the "serious difficulty" element of the civil-commitment inquiry and on that element, both men were deemed by this Court *not* to have serious difficulty refraining from sexually violent conduct or child molestation. Both men were released. So whether this Court believes Mr. Charboneau is more similarly situated to Caporale or to Antone, the result is the same: He should be released.

## CONCLUSION

For the foregoing reasons, and those in Mr. Charboneau's opening brief, the District Court's judgment civilly committing him should be reversed. At the very least, it should be remanded to the District Court for reconsideration under the proper legal standard.

    Respectfully submitted,

    LOUIS C. ALLEN
    ACTING FEDERAL PUBLIC DEFENDER

    /s/ Jaclyn L. DiLauro

    JACLYN L. DILAURO
    ASSISTANT FEDERAL PUBLIC DEFENDER
    EASTERN DISTRICT OF NORTH CAROLINA
    150 Fayetteville Street, Suite 450
    Raleigh, NC 27601
    (919) 856-4236

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3,057 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman font.

/s/ Jaclyn L. DiLauro
Jaclyn L. DiLauro

## CERTIFICATE OF SERVICE

I certify that on March 28, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of such filing to the following counsel of record:

>  MICHAEL GORDON JAMES
>  OFFICE OF THE UNITED STATES ATTORNEY
>  EASTERN DISTRICT OF NORTH CAROLINA
>  Federal Building
>  Suite 800
>  310 New Bern Avenue
>  Raleigh, North Carolina 27601-1461
>  mike.james@usdoj.gov

/s/ Jaclyn L. DiLauro
Jaclyn L. DiLauro